# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| DARRELL F. EWING, individually and on behalf of all others similarly situated, | § § § | |
| Plaintiff, | § § | Civil Action No. 1:15-cv-01491 |
| v. | § § | JURY TRIAL DEMAND |
| AMERIANA BANCORP, JEROME J. GASSEN, JENNIFER P. BOTT, MICHAEL E. BOSWAY, R. SCOTT HAYES, MICHAEL E. KENT, DONALD C. DANIELSON, CHARLES R. HAYWOOD, MICHAEL W. WELLS, RICHARD E. HENNESSEY, WILLIAM F. MCCONNELL, JR., RONALD R. PRITZKE, and FIRST MERCHANTS CORPORATION, | § § § § § § § § § § | |
| Defendants. | § § § § | |

## COMPLAINT

Plaintiff Darrell F. Ewing ("Plaintiff"), by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

### NATURE OF THE CASE

1.     Plaintiff brings this action against Ameriana Bancorp ("Ameriana" or the "Company") and the members of Ameriana's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 14a-9 promulgated thereunder ("Rule 14a-9"). Plaintiff's claims arise out of the Board's attempt to sell the Company to First Merchants Corporation ("First Merchants")

2.      On June 29, 2015, First Merchants and the Company announced that they had entered into a definitive agreement (the "Merger Agreement") whereby Ameriana will merge with and into First Merchants, and Ameriana's wholly owned bank subsidiary, Ameriana Bank, will merge with and into First Merchants Bank, NA (the "Proposed Transaction"). In the Proposed Transaction, Ameriana shareholders will receive 0.9037 shares of First Merchants common stock for each Ameriana share owned. At the time of its announcement, the Proposed Transaction was valued at approximately $68.8 million.

3.      The Merger is the result of an inadequate sale process. As discussed in more detail below, the Board failed to properly negotiate with First Merchants and other parties to get the best deal possible for Ameriana shareholders.

4.      The Board has agreed to lock up the Proposed Transaction with deal protection devices that preclude other bidders from making a successful competing offer for the Company. Specifically, pursuant to the merger agreement dated June 26, 2015 (the "Merger Agreement"), the defendants agreed to: (i) a strict no-solicitation provision that prevents the Company from pursuing any alternatives to the Proposed Transaction; and (ii) a provision that provides First Merchants with five business days to match any competing proposal that might arise. In addition, more than 5% of the Company's common stock is already "locked up" in favor of the Proposed Transaction.

5.      Then, on August 26, 2015, the Company, with First Merchants, filed a Registration Statement on Form S-4 (the "Registration Statement") with the SEC relating to the Proposed Transaction. The Registration Statement fails to provide the Company's shareholders with material information and also provides them with materially misleading information,

thereby rendering the public shareholders unable to make an informed decision whether to vote in favor of the Proposed Transaction.

6.     The defendants' approval and dissemination of the materially misleading Registration Statement constitute violations of the federal securities laws.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), as Plaintiff alleges violations of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

8.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs. Plaintiff is a citizen of Florida and no defendant is a citizen of Florida.

9.     This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

10.     Venue is proper in this district because Ameriana maintains its principal place of business in this District.

## PARTIES

11.     Plaintiff is, and has been at all relevant times, the owner of shares of Ameriana. Plaintiff is a citizen of Florida.

12.     Ameriana is a corporation organized and existing under the laws of the State of Indiana. It maintains its principal executive offices at 2118 Bundy Avenue, New Castle, Indiana 47263.

13.     Defendant Jerome J. Gassen ("Gassen") has been President, Chief Executive Officer, and a director of Ameriana and Ameriana Bank since June 2005. Defendant Gassen is a citizen of Indiana.

14.     Defendant Jennifer P. Bott ("Bott") has been a director of Ameriana and Ameriana Bank since 2013. Defendant Bott is a citizen of Indiana.

15.     Defendant Michael E. Bosway ("Bosway") has been a director of Ameriana and Ameriana Bank since 2009. Defendant Bosway is a citizen of Indiana.

16.     Defendant R. Scott Hayes ("Hayes") has been a director of Ameriana since 1990 and of Ameriana Bank since 1987. Defendant Hayes is a citizen of Indiana.

17.     Defendant Michael E. Kent ("Kent") is the Chairman of the Boards of Ameriana and Ameriana Bank and has been a director of Ameriana since 1990 and of Ameriana Bank since 1987. Defendant Kent is a citizen of Indiana.

18.     Defendant Donald C. Danielson ("Danielson") has been a director of Ameriana since 1990 and of Ameriana Bank since 1971. Defendant Danielson is a citizen of Indiana.

19.     Defendant Charles R. Haywood ("Haywood") has been a director of Ameriana and Ameriana Bank since 2013. Defendant Haywood is a citizen of Indiana.

20.     Defendant Michael W. Wells ("Wells") has been a director of Ameriana and Ameriana Bank since 2013. Defendant Wells is a citizen of Indiana.

21.     Defendant Richard E. Hennessey ("Hennessey") has been a director of Ameriana and Ameriana Bank since 2004. Defendant Hennessey is a citizen of Indiana.

22.     Defendant William F. McConnell, Jr. ("McConnell") has been a director of Ameriana and Ameriana Bank since 2013. Defendant McConnell is a citizen of Indiana.

23.     Defendant Ronald R. Pritzke ("Pritzke") has been a director of Ameriana and Ameriana Bank since 1992. Defendant Pritzke is a citizen of Indiana.

24.     The defendants referenced in ¶¶ 13 through 23 are collectively referred to as the Individual Defendants or the Board.

25.     Defendant First Merchants is corporation organized under the laws of the State of Indiana. It maintains its principal executive offices at 200 East Jackson Street, Muncie, Indiana 47305.

FURTHER SUBSTANTIVE ALLEGATIONS

*Company Background and its Poise for Growth*

26.     Ameriana is a publicly traded holding company for Ameriana Bank. Ameriana Bank was founded in 1890 and has taken several forms since then. In June 2009, Ameriana Bank became a commercial bank. Ameriana Bank has one main office and 13 branch offices in various towns in Indiana. Ameriana Bank's services include (a) accepting deposits, (b) originating commercial, mortgage, consumer, and construction loans, and (c) providing investment, brokerage, and insurance services through its two wholly owned subsidiaries. Ameriana Bank's primary sources of income interest and fees on loans and interest on investments.

27.     Ameriana achieved stellar financial performance in 2014. On January 29, 2015, the Company issued a press release announcing its fourth quarter and full-year 2014 financial results. In 2014, Ameriana earned $2.4 million, or $0.79 per basic and diluted share, in net income, an 8.3% improvement, or 7.5% improvement on a per share basis, over 2013. The press release quoted Defendant Gassen, who commented on the Company's 2014 performance:

> "I am very pleased with our team's accomplishments in 2014, which proved to be a challenging year for the banking industry as net interest margin compression and a difficult lending environment continued to be major issues. We moved forward with our Indianapolis metropolitan area retail expansion strategy, opening an office in Noblesville and a second Fishers location. We were also successful in

growing earnings over the prior year and exceeded 2014 earnings guidance provided at our annual meeting last May. Additional improvement in our credit metrics was another significant achievement for the year that also will contribute favorably to our earnings growth efforts in 2015. At December 31, 2014, non-performing loans were $4.4 million, a decrease of $978,000 from September 30, 2014."

28.     The Company's success continued in the first quarter of 2015. On April 20, 2015, Ameriana issued a press release announcing its first quarter 2015 financial performance. During the first quarter, Ameriana earned $502,000, or $0.17 per basic and diluted share, in net income. In addition, the Company's "total loans receivable grew 1.2% to $323.9 million, and total deposits grew 3.1% to $390.6 million." Once again, Defendant Gassen commented on the Company's performance, stating, "I am very pleased to report continued growth in [Ameriana's] loan portfolio of $3.8 million for the quarter and growth in deposits of $11.6 million, with much of this success a result of [Ameriana's] Indianapolis metropolitan area retail expansions strategy[.]"

29.     More recently, the Company delivered solid financial results in the second quarter of 2015. On, July 24, 2015, the Company issued a press release announcing its second quarter 2015 financial performance. During the second quarter, Ameriana earned $780,000, or $0.26 per basic and diluted share. Although Ameriana's earnings per share were significantly higher than the previous quarter, they were down relative to the same period in 2014. Defendant Gassen attributed the Company's lower year-over-year performance to the Proposed Transaction—"[e]arnings for the second quarter were down sharply from the year earlier quarter due to $407,000 in legal and investment banking fees, as well as other costs related to [the Proposed Transaction]." Beyond the Company's earnings, Defendant Gassen highlighted "the Bank's continuing success in loan portfolio growth, with an increase of $7.5 million, or 2.4% in the second quarter, bringing total growth for the first half of 2015 to $11.3 million."

*The Merger is the Result of an Inadequate Process*

30.     As described in the Registration Statement, the Merger is the result of an inadequate, toothless process during which the Board failed to negotiate effectively to achieve a fair price for the Company's shareholders (the "Sale Process"). The Board first met with its financial advisor, River Branch Capital LLC ("River Branch"), in November 2013. In June 2014, the Board met again with River Branch. During the June 2014 meeting, River Branch discussed the Company's business and "outlined potential targets for Ameriana Bancorp to consider acquiring and likely acquirers for Ameriana Bancorp." The Registration Statement does not describe any efforts or actions by the Board or Ameriana's management in furtherance of effecting an acquisition by the Company of another bank.

31.     Following the Company's meeting with River Branch, Ameriana received a written presentation from one of its larger institutional shareholders. The presentation "summarized the state of the banking industry, Ameriana Bancorp's operating results and stock price performance, the merger and acquisition landscape for banks and potential strategic alternatives for Ameriana Bancorp to consider." Following Ameriana's receipt of the presentation, on August 24, 2015, the Board engaged "River Branch to act as the Company's financial adviser to explore the potential sale of the company." The Registration Statement does not disclose the contents of the presentation, including the potential "strategic alternatives" that the Company was to consider. The Registration Statement also does not disclose why the Board chose to pursue a sale of the Company rather than any other strategic alternative.

32.     On November 20, 2014, Ameriana received a written indication of interest from a company identified as Company A in the Registration Statement. Company A indicated an interest in acquiring Ameriana in a transaction composed of 80% stock and 20% cash with a

value of $22.00 per share. In addition, a representative of Ameriana's Board would be appointed to the board of the combined entity. In agreeing to the Proposed Transaction, the Board failed even to negotiate for representation by an Ameriana Board member on the First Merchants Board.

33.     Then, on December 3, 2014, Company A provided to Ameriana a draft merger agreement. Inexplicably, Company A lowered its offer from $22.00 per share to $21.14 per share. The Registration Statement fails to disclose whether the Board questioned Company A or attempted to negotiate with Company A regarding the lowered offer. The Registration Statement states only that due to the revised offer, the Board decided not to proceed solely with Company A.

34.     Then, on February 13, 2015, Ameriana received an indication of interest from "Company B" to acquire the Company for consideration valued between $19.00 and $20.00. On February 27, 2015, Ameriana received an indication of interest of interest from First Merchants to acquire the Company for consideration valued between $21.50 and $23.00.

35.     On March 17, 2015, Company A submitted a renewed offer to acquire the Company for $21.41 per share. The Registration Statement fails to state the basis for Company A increasing its offer. In addition, Company A subsequently offered to provide that Ameriana shareholders "would receive no less than $21.50 per share at the time of the signing of the merger agreement either by increasing the cash or stock consideration if necessary." First Merchants made no such offer and the Merger Agreement fails to provide for such protections for Ameriana shareholders. Based on the several aspects of Company A's offer that were superior to First Merchants' offer—"the advantages of partnering with an out of market acquirer who was committed to utilizing Ameriana Bancorp's franchise as a building block to increase its

investment in Indianapolis, the ability of Company A, which had already completed its diligence, to move quicker towards announcement and the inclusion of Board representation with Company A"—the Board decided to move forward with Company A instead of First Merchants.

36.     On April 9, 2015, Company A provided a revised merger agreement. On May 1, 2015, however, "Company A notified Ameriana Bancorp that it could no longer provide a value to Ameriana Bancorp shareholders of $21.50 per share. Company A provided a revised exchange ratio, which resulted in an implied value of $20.52." Again, the Registration Statement fails to explain the reason for the lowered offer or whether the Board even attempted to negotiate with Company A to return to its original offer.

37.     On June 17, 2015, First Merchants submitted a revised offer. The revised offer provided for an all-stock acquisition. Yet again, the Registration Statement fails to disclose the reason for the change from mixed consideration to an all-stock transaction. The Board ultimately accepted First Merchants' all-stock offer.

### _The Merger Is Unfair_

38.     In a press release dated June 29, 2015, the Company and First Merchants announced the execution of the Merger Agreement. As stated in the press release, Ameriana shareholders would receive 0.9037 shares of First Merchants in the Proposed Transaction. According to the press release, Ameriana shareholders will receive consideration worth $22.71 per share in the Proposed Transaction based on the closing price of First Merchants' common stock on June 26, 2015. Fractional shares will be converted into the right to receive cash in an amount equal to the average closing price of Ameriana common stock for the ten trading days preceding the fourth calendar day prior to the date of the Proposed Transaction's closing. The Proposed Transaction is valued at $68.8 million.

39.     Given the Company's recent strong performance and its positioning for growth, the Proposed Transaction consideration is inadequate and significantly undervalues the Company.

40.     The Proposed Transaction consideration fails to compensate adequately Ameriana's shareholders for the significant synergies created by the Proposed Transaction. The Company's June 29, 2015 press release announcing the Proposed Transaction quoted Michael Rechin, president and chief executive officer of First Merchants: "The addition of Ameriana Bank supports our goal of becoming an efficient, higher performing company. With the addition of significant deposits in Henry and Madison counties, First Merchants will hold the lead market share position."

41.     Moreover, the value of the Proposed Transaction to Ameriana shareholders has been overstated. Specifically, the June 26, 2015 First Merchants share price on which the press release based the value of the Proposed Transaction to Ameriana shareholders was, at the time, a five-year high for First Merchants stock. Further indicating Ameriana's value to First Merchants, since the announcement of the Proposed Transaction, First Merchants stock has risen from $25.13 per share on June 26, 2015 to close at $26.27 per share on September 8, 2015, an increase of 4.5%.

42.     Despite the significant synergies inherent in the transaction for First Merchants, however, the Board failed to secure a fair price for either the intrinsic value of the Company's assets or the value of the Company's assets to First Merchants.

43.     First Merchants is seeking to acquire the Company at the most opportune time, at a time when the Company is performing very well and is positioned for tremendous growth.

*Conflicts of Interest Among the Board and Management*

44.    Several members of Ameriana's management, including Defendant Gassen, were incentivized to agree to the inadequate Proposed Transaction. Specifically, if these individuals are terminated in connection with the closing of the Proposed Transaction they will receive the sizeable payments that follow:

**Golden Parachute Compensation**

| Name And Principal Position | Cash ($) (1) | Equity ($) (2) | Perquisites/ Benefits ($) (3) | Total ($) |
|---|---|---|---|---|
| Jerome J. Gassen<br>*President and Chief Executive Officer* | $907,055 | $80,530 | $ 16,588 | $1,004,173 |
| John J. Letter<br>*Executive Vice President, Treasurer and Chief Financial Officer* | $386,520 | $42,480 | $ 16,155 | $ 445,155 |
| Deborah C. Robinson<br>*Executive Vice President and Chief Banking Officer* | $335,388 | $58,600 | $ 35,002 | $ 428,990 |

*The Preclusive Deal Protection Devices*

45.    In addition, as part of the Merger Agreement, Defendants agreed to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and ensure that no competing offers will emerge for the Company.

46.    Section 7.5(a) of the Merger Agreement includes a "no solicitation" provision barring the Company from soliciting interest from other potential acquirers in order to procure a price in excess of the amount offered by First Merchants.

47.    If any unsolicited indication of interest is received by the Company, § 7.5(c) of the Merger Agreement requires the Company to notify First Merchants orally and in writing of the material terms of such request of acquisition proposal and the identity of the other party. In addition, Ameriana must "keep First Merchants reasonably informed of the status and details (including amendments or proposed amendments) of any such request or Acquisition Proposal,

including the status of any discussions or negotiations with respect to any Superior Acquisition Proposal."

48.     Pursuant to § 7.5(b) of the Merger Agreement, should an unsolicited bidder submit a competing proposal, the Company must provide First Merchants with five days' written notice. During those five days, Ameriana must negotiate with First Merchants (if First Merchants so chooses) to amend the Merger Agreement so that the competing proposal no longer constitutes a superior offer.

49.     In other words, the Merger Agreement gives First Merchants access to any rival bidder's information and allows First Merchants a free right to top any superior offer simply by matching it. Accordingly, no rival bidder is likely to emerge and act as a stalking horse because the Merger Agreement unfairly assures that any "auction" will favor First Merchants, which can piggy-back upon the due diligence of the foreclosed second bidder.

50.     Furthermore, in connection with the Proposed Transaction, the Board and certain of the Company's officers signed voting agreements pursuant to which they have agreed to vote their Ameriana shares in favor of the Proposed Transaction. In total, shareholders who collectively own 156,875.48 shares, or approximately 5% of Ameriana's common stock, have agreed to vote in favor of the Proposed Transaction. Accordingly, more than 5% of Ameriana's common stock is already "locked up" in favor of the Proposed Transaction.

51.     Ultimately, these preclusive deal protection provisions restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company. The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative transaction that constitutes or

would reasonably be expected to constitute a superior proposal are so narrowly circumscribed that any "out" is nothing more than illusory under the circumstances.

### *The Materially Misleading Registration Statement*

52.     To make matters worse, on August 26, 2015, the Company and First Merchants filed the Registration Statement with the SEC. The material in the Registration Statement will be disseminated to Ameriana's shareholders to solicit their vote in favor of the Proposed Transaction. The Registration Statement denies the Company's shareholders material information concerning the financial and procedural fairness of the Proposed Transaction. Without such information, Ameriana shareholders cannot make a fully informed decision about whether to vote in favor of the Proposed Transaction.

#### *Disclosures Concerning the Insufficient Sale Process*

53.     The Registration Statement fails to disclose the contents of the written presentation prepared by a large institutional shareholder of Ameriana, including the potential strategic alternatives advocated therein. The Registration Statement also fails to disclose why the Board chose to pursue only a sale of the Company rather than any other strategic alternative in the wake of its receipt of the presentation.

54.     The Registration Statement fails to disclose the meaning of the phrase "similar estimates as used by Company A" in discussing River Branch's identification of nine potential acquisition partners, *i.e.*, (a) the actual information being estimated, (b) who prepared the estimates and on what basis, and (c) how the estimates were similar.

55.     The Registration Statement fails to disclose (a) why Company A increased the value of its original offer on March 17, 2015, (b) why Company A twice revised its offers to

lower value, and (c) whether the Board even attempted to convince Company A to restore its offers to their original values.

56.     The Registration Statement fails to disclose the content of the discussion between First Merchants CEO Michael C. Rechin and a member of the Board on May 7, 2015. The Registration Statement also fails to disclose the identity of this member of the Board, who the Registration Statement states "had a previous relationship" with Mr. Rechin.

57.     The Registration Statement fails to disclose why First Merchants revised its offer from mixed consideration to an all-stock acquisition.

58.     The Registration Statement fails to disclose whether the Board even attempted to negotiate a "floor" or similar provision, like the one provided for in Company A's offer, in the Merger Agreement to protect Ameriana's shareholders from fluctuations in First Merchants' stock price. Likewise, the Registration Statement fails to disclose whether the Board even attempted to provide for a representative of Ameriana's shareholders on the First Merchants board of directors, as provided for in First Merchants' offer.

*Disclosures Concerning River Branch's Fairness Opinion*

59.     Regarding River Branch's "Comparable Public Company Analysis" for Ameriana, the Registration Statement fails to disclose (a) the observed company-by-company pricing multiples and financial metrics examined by River Branch; (b) whether other multiples were examined (and if so, they should be disclosed); and (c) all of the pricing metrics in the Ameriana Comparable Group table on page 52 (*i.e.*, multiples based on the pre-announcement stock price are calculable, not "n/a").

60.     Regarding River Branch's "Ameriana Precedent Group" analysis, the Registration Statement fails to disclose (a) the observed transaction-by-transaction dates, equity values,

pricing multiples and financial metrics; (b) whether other multiples and/or transaction premiums were examined (and if so, they should be disclosed); and (c) whether all of the target companies were publicly traded (if not, the Registration Statement should indicate which were and which were not).

61.     Regarding River Branch's "Ameriana Discounted Cash Flow Analysis," the Registration Statement fails (a) to disclose the definition or formula for cash flows to equity holders; (b) to disclose the basis for the assumed 8.0% tangible common equity to tangible assets ratio; (c) to disclose whether the range of discount rates is based on weighted average cost of capital or cost of equity; (d) to identify the assumptions used in creating the range of discount rates, and to quantify them and indicate the basis for each; (e) to disclose the basis for the assumed budget variance of +/-10%; and (f) to disclose the implied terminal pricing multiples corresponding to the assumed perpetuity growth rate.

62.     Regarding River Branch's "Pro Forma Financial Impact Analysis," the Registration Statement fails (a) to disclose all assumptions regarding accounting treatment, acquisition-related adjustments, and cost synergies, and to quantify each assumption and indicate its basis; and (b) to quantify the accretion to 2016 earnings per share, the dividend accretion/dilution to First Merchants, and the accretion/dilution to any other metric examined.

63.     Regarding River Branch's "First Merchants Comparable Public Company Analysis," the Registration Statement fails to disclose (a) the observed company-by-company pricing multiples and financial metrics and whether other multiples were examined by River Branch (if so, they should be disclosed); and (b) how the results of this analysis were used to assess the fairness of the offer to Ameriana shareholders.

64.     Regarding River Branch's "First Merchants Discounted Cash Flow Analysis," the Registration Statement fails to disclose (a) the definition or formula for cash flows to equity holders, and if it is different in any way from that used for Ameriana's cash flows; (b) the basis for the assumed 8.0% tangible common equity to tangible assets ratio; (c) whether the range of discount rates is based on weighted average cost of capital or cost of equity, and fails to identify the assumptions used and to quantify and indicate the basis for each; (d) why the assumed discount rates for First Merchants were lower than for Ameriana; (e) the basis for the assumed budget variance of +/-10%; the implied terminal pricing multiples corresponding to the assumed perpetuity growth rate; and (f) how the results of this analysis were used to assess the fairness of the Proposed Transaction to Ameriana shareholders.

65.     The Registration Statement also fails to quantify in dollar terms River Branch's fee and to describe the "financial and strategic advisory services" that River Branch has performed for the Company over the last two years.

*Disclosures Concerning Financial Projections*

66.     The Registration Statement completely fails to disclose any financial projections to Ameriana's shareholders. The following metrics should be disclosed, with appropriate explanations of assumptions: (a) free cash flows; (b) reconciliation of GAAP net income to non-GAAP free cash flows; (c) earnings per share; (d) tangible assets; (e) tangible common equity; (f) tangible book value per share; and (g) synergies and costs required to realize such synergies.

67.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I
### Violations of Section 14(a) of the Exchange Act
### and Rule 14a-9 Promulgated Thereunder
### (Brought individually against all Defendants)

68.     Plaintiff repeats all previous allegations as if set forth in full herein.

69.     Defendants issued the Registration Statement, which includes the joint proxy statement of Ameriana and First Merchants, with the intention of soliciting shareholder support of the Merger.

70.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act provides that a proxy statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

71.     Specifically, the Registration Statement violates Section 14(a) and Rule 14a-9 because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

72.     The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth.

73.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to cast a fully informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

<u>JURY DEMAND</u>

74.     Plaintiff requests a trial by jury of all claims that can be so tried.

WHEREFORE, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A)     enjoining, preliminarily and permanently, the Proposed Transaction;

(B)     in the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

(C)     directing that the defendants account to Plaintiff for all damages caused by them;

(D)     awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(E)     granting Plaintiff such further relief as the Court deems just and proper.

Dated: September 22, 2015                    Respectfully submitted,

                                             */s/ Joseph N. Williams*
                                             Joseph N. Williams (#25874-49)
                                             James A. Piatt (#28320-49)
                                             RILEY WILLIAMS & PIATT, LLC
                                             301 Massachusetts Avenue
                                             Indianapolis, Indiana  46204
                                             Tel:    (317) 633-5270
                                             Fax:    (317) 426-3348
                                             Email: jwilliams@rwp-law.com
                                                     jpiatt@rwp-law.com

                                             *Counsel for Plaintiff*

**OF COUNSEL:**
Shane T. Rowley
LEVI & KORSINSKY LLP
30 Broad Street, 24th Floor
New York, New York 10004
Tel: (212) 363-7500
Fax: (212) 363-7171